UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                                    Criminal No. 05-cr-057-JD

Gordon Reid


O R D E R

    Gordon Reid is charged with one count of interference with commerce by means of robbery in violation of 18 U.S.C. § 1951(a), a Hobbs Act offense, after he allegedly robbed a Hess Gas Station and Convenience Store in Concord, New Hampshire.  He moves to suppress the pretrial identifications and anticipated in-court identifications of him by two witnesses, asserting that the pretrial identifications were impermissibly suggestive, which also would give rise to a substantial likelihood of misidentification in court.  The government objects to both motions.  Reid's motion for a hearing was granted, and a hearing on the motions was held on February 8, 2006.


Discussion

    "[A] court is to withhold identification evidence from the jury only in extraordinary circumstances."  United States v. Lebron-Cepeda, 324 F.3d 52, 58 (1st Cir. 2003).  When a defendant challenges the admissibility of identification evidence, the court uses a two-part analysis to determine whether the evidence

must be suppressed.  United States v. Lopez-Lopez, 282 F.3d 1, 10 (1st Cir. 2002).  First, the defendant must show that the identification procedure was impermissibly suggestive.  United States v. Gray, 958 F.2d 9, 14 (1st Cir. 1992); see also United States v. Sullivan, 431 F.3d 976, 985 (6th Cir. 2005).  If he satisfies that burden, the court then considers whether in light of the totality of the circumstances the identifications were nevertheless reliable.  Lopez-Lopez, 282 F.3d at 10-11.  The same test applies to in-court identifications, that is, "in-court identification testimony is admissible unless its basis, the pretrial identification, has proven so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification."  United States v. Maguire, 918 F.2d 254, 264 (1st Cir. 1990).

   The following is a summary of the hearing testimony about the circumstances pertinent to the identifications of Reid as the person who robbed the Hess Gas Station and Convenience Store during the evening of February 13, 2005.  That night Renee King was working alone as the clerk of the store.  It was her fourth day of work at the station and the first time she had worked alone.  David Broadbent and his teenage son were returning from the son's hockey game in Massachusetts and stopped at the Hess station to fill up the car.  Broadbent customarily buys gas for his cars and his business vehicles at the Hess station so that he

is there several times each week.

A customer entered the convenience store and walked back to the coolers. He brought a six-pack of Budweiser beer to the counter. Broadbent came into the store to prepay for gasoline. The other customer waved Broadbent ahead to pay for his gas. Their eyes met during that interaction, and Broadbent remembered the customer as a black male, wearing a black leather jacket, and a black knit cap. He also noticed that the customer had bulgy eyes. Broadbent put his $40.00 on the counter to prepay for gas and went out to pump the gas.

Once Broadbent was outside, the customer told King to give him the money in the cash register. She had difficulty opening the register because the gas transaction was entered into the register and because she was not adept at operating it. The customer told her to hurry up, opened his jacket showing what appeared to be a gun, warned her to keep her hands where he could see them, and told her to hurry or it would be her life. Broadbent then came back and told King from the door that the pump was not working. She apologized, and he went back to try again. Broadbent could see King talking with the customer while he waited for the pump to operate. Eventually King got the cash drawer open and gave the customer the cash. He told her to go into the bathroom and close the door, which she did. The customer left, taking the money and the beer.

Broadbent saw the customer leave and came back into the store because the pump was still not operating. He saw that the cash drawer was open but King was not there. He called out, "Hello," and King came out of the bathroom. She said that the store had been robbed, and she was upset. King pushed the alarm to the Concord Police Department and then talked with an officer on the telephone. The police arrived while she was still on the telephone. She described the customer who robbed the store as a black man, somewhat taller than she was, with a black leather jacket, and wearing a black hat.[1]

After the clerk at the nearby Holiday Inn reported that a suspicious person had tried to rent a room there without identification, Concord police officers searched the area behind the Holiday Inn, along Storrs Street. They soon found Gordon Reid in the area of the Ralph Pill facility. Officer Fallon drove Reid back to the Hess Station for a "show-up" identification, to see if the witnesses would recognize him as the customer who robbed the store. Officer Fanjoy, who stayed at the Hess Station with King and the Broadbents, told them that a police officer was bringing someone to the station for identification. King and Broadbent gave statements to the police.

---

[1]The witnesses' testimony varies somewhat as to whether Broadbent reentered the store twice or three times before the robbery and as to the type of hat King described.

Officer Fanjoy located his cruiser so that he could shine his spotlight where Officer Fallon would park the cruiser with Reid. Reid was riding in the back seat of Officer Fallon's cruiser. When they arrived, he tried to turn away from the window and the light, but the officers pushed him back up and turned his head toward the window.[2] Officer Fanjoy walked with King to within twenty feet of the cruiser where Reid was sitting.[3] The area was well-lighted with overhead lights and also with the light from Officer Fanjoy's cruiser. As soon as Reid's head was turned to the window, King identified him as the customer who robbed the store. Broadbent and his son were standing behind Officer Fanjoy and King. When Reid's head was turned toward the window, Broadbent identified Reid as the customer he had seen in the store.

A. <u>Impermissibly Suggestive</u>

The "show-up" identification procedure, in which a suspect is shown to a witness alone rather than as part of a line up, is disfavored as being impermissibly suggestive. <u>United States v. de Jesus-Rios</u>, 990 F.2d 672, 677 (1st Cir. 1993). In some circumstances, however, the show-up procedure has been found not

---

[2] The testimony varied somewhat about Reid's demeanor during the identification process.

[3] The testimony varied somewhat about where the witnesses were standing during the identifications.


to be unreasonably suggestive.  <u>See</u> <u>United States v. Watson</u>, 76 F.3d 4, 6 (1st Cir. 1996) ("Show-ups that take place immediately after the offense has been committed may be necessary in order to avoid the mistaken apprehension of the wrong person.")  <u>Lebron-Cepeda</u>, 324 F.3d at 59 (identification not impermissibly suggestive because identification was contemporaneous with events even though defendant identified after witness saw him sitting handcuffed in police cruiser).  Nevertheless, in this case the government makes no developed argument that the show-up procedure used here was not impermissibly suggestive.  Therefore, the court will move to the second prong of the test.  <u>See</u> <u>United States v. Henderson</u>, 320 F.3d 92, 100 (1st Cir. 2003)

B.  <u>Reliability</u>

"'[R]eliability is the linchpin in determining the admissibility of identification testimony.'"  <u>Id.</u> (quoting <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114 (1977)).  Reliability is determined based on the totality of the circumstances of the identification process.  <u>Lopez-Lopez</u>, 282 F.3d 10-11.  Five factors are used to evaluate reliability:  "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness at the confrontation; (5)

the length of time between the crime and the confrontation." Henderson, 320 F.3d at 100 (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)).

Both King and Broadbent had an opportunity to view the customer in the store. King, despite her nervousness, interacted with the customer over several minutes. Broadbent interacted with the customer when he prepaid for his gas and saw him when he came back in to inquire about the pump. Both had paid sufficient attention to the customer to form a reliable memory. Although some of the details of the witnesses' descriptions may vary slightly, in large part the descriptions were consonant, supporting their accuracy. King was completely certain about her identification. Although Broadbent's identification of Reid may have been somewhat less certain, any uncertainty can be addressed through cross examination. Less than an hour elapsed between the time of the robbery and the witnesses' identification of Reid.

Based on the totality of the circumstances and focusing on the five factors for evaluating reliability, the identifications of Reid as the man who robbed the Hess station made by King and Broadbent are sufficiently reliable to be admissible. That is so whether or not the show-up procedure was impermissibly suggestive. Based on the circumstances, there is not a substantial likelihood of "irreparable misidentification" in the identifications made by either witness. de Jesus-Rios, 990 F.2d at 677.

Conclusion

For the foregoing reasons, the defendants' motions to suppress identifications (documents no. 88 and 89) are denied.

SO ORDERED.

*(signed)* Joseph A. DiClerico, Jr.
_____
Joseph A. DiClerico, Jr.
United States District Judge

February 9, 2006

cc: Gordon Reid, pro se
    Michael J. Iacopino, Esquire
    Helen W. Fitzgibbon, Esquire
    Clyde R. W. Garrigan, Esquire
    U.S. Probation
    U.S. Marshal