UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                          Criminal No. 05-cr-057-JD

Gordon Reid

O R D E R

Gordon Reid is charged with one count of robbery under the Hobbs Act, 18 U.S.C. § 1951. His first trial on that charge ended in a mistrial when the jury was unable to reach a unanimous verdict. Reid, who is proceeding pro se, filed a motion to dismiss the indictment on the ground of double jeopardy and a renewed motion to disqualify Assistant United States Attorney Helen Fitzgibbon.[1] Transcripts of the trial were produced, and Reid has had an opportunity to review them. He has filed supplementary motions, and the government has filed objections.

I. Motion to Dismiss

Reid moves to dismiss the indictment in this case, asserting that because his first trial ended in a mistrial, he cannot be retried for the same offense. He contends that a second trial would violate the Double Jeopardy Clause of the Fifth Amendment. The government objects to the motion.

---

[1] Reid's first motion to disqualify was denied on February 7, 2006. See Order, Feb. 7, 2006, doc. no. 123.

"[T]he Double Jeopardy Clause protects defendants against serial attempts by the government to convict a defendant on a single charge." United States v. Brown, 426 F.3d 32, 36 (1st Cir. 2005). In a criminal case tried to a jury, jeopardy attaches when the jury is sworn, United States v. Toribio-Lugo, 376 F.3d 33, 37-38 (1st Cir. 2004), and continues until a terminating event such as acquittal or an invalid mistrial, United States v. Julien, 318 F.3d 316, 321 (1st Cir. 2003). Double jeopardy protection bars "retrial of a defendant after a mistrial ordered over the defendant's objection unless the mistrial was occasioned by manifest necessity." United States v. McIntosh, 380 F.3d 548, 553 (1st Cir. 2004).

In support of his motion to dismiss, Reid contends that the court declared a mistrial prematurely without giving him an opportunity to object, that the court failed to reinstruct on the burden of proof, as he had asked, that the court improperly placed the burden on him to show that a manifest necessity did not exist, and that the prosecutors purposefully instigated a mistrial.

A. Decision to Declare a Mistrial

"Although the government bears the burden of establishing manifest necessity, a hung jury is the paradigmatic example of manifest necessity." Brown, 426 F.3d at 36 (internal quotation

marks omitted).  A review of whether manifest necessity existed to support a mistrial is considered in the specific context of the case but three factors are particularly relevant to the inquiry:  "(1) whether the court provided counsel an opportunity to be heard; (2) whether the court considered alternatives to a mistrial; and (3) whether the court's decision was made after adequate reflection."  Id. (citing United States v. Simonetti, 998 F.2d 39, 41 (1st Cir. 1993)).

In this case, the court declared a mistrial when the jury could not reach a unanimous verdict, that is, because of a hung jury.  Before reaching that point, the jury sent several questions to the court that indicated they were having difficulty reaching a verdict.  The jury began its deliberations at one in the afternoon on February 21, 2006.  Just before five p.m., the jury asked:  "If we are not close to a decision do we leave at 5 pm and come back tomorrow morning[?]"

The government and Reid were informed of the note, which was then addressed in open court.  The jury was told that they could stay and work later if they wanted to but that it was customary to recess at five and to return to deliberations in the morning.  The jury chose to leave and to return at nine o'clock the next morning.[2]

---

[2] Reid mistakenly states in his supplemental motion that the jury resumed its deliberations at 11:20 a.m., which is the time the transcribed record of court proceedings that day began.  The jury resumed deliberations shortly after nine a.m.

3

At 2:15 p.m. on the second day of deliberations, the jury asked: "We cannot come to a unamious [sic] decision, what do we do?" The government and Reid were given copies of the note. Before the jury was called into the courtroom, the court explained to the parties that it intended to ask the jury to continue their deliberations to try to reach a verdict. The court proposed to reinstruct the jury, using the modified <u>Allen</u> charge that had been given as part of the jury instructions. Reid asked that the jury also be reinstructed on the burden of proof. Although the court initially declined to reinstruct on the burden of proof, that instruction was ultimately given.

The jury was brought into the courtroom and was given the following charge:

> You've been deliberating now for a little over a full day. What I am going to ask you to do is to go back and deliberate a little bit more, just for a reasonable period of time, for what you consider to be a reasonable period of time, to see if you can arrive at a verdict. And I will remind you of an instruction that I gave you at the conclusion of my instructions yesterday, and that is, it is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence in the case with the other jurors. In the course of your deliberations, do not hesitate to change – to examine your own views and to change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors or merely for the purpose of returning a verdict.
>
> So I would ask you to keep those instructions in mind, and I would also remind you, of course, about my

>    instructions concerning reasonable doubt, that the
>    burden always rests on the government to prove all of
>    the material elements of the offense charged beyond a
>    reasonable doubt.
>
>         So, as I said, I will ask you to go back and to
>    spend what you consider to be a reasonable amount of
>    time to see if you can arrive at a verdict, and if you
>    come to the conclusion that there is no reasonable
>    probability that you can, then send another note out to
>    me and I will have you returned to the courtroom and I
>    will ask the foreperson that question.
>
>         So give it a little more time.  As I said, I will
>    allow you to determine what you think a reasonable
>    amount of time is to see if you can resolve the matter.
>    All right.

Following that instruction, the jury left the courtroom to resume deliberations.  The court then noted that if the jury was unable to reach a verdict, it would be necessary to declare a mistrial.  Reid understood that a mistrial would be declared in that event.

At five o'clock the jury sent a note that stated:  "Your Honor, we are unable to come to a unanimous decision.  We feel we have come to an impasse in this case and can go no further."  Copies of the note were given to Reid and the government, and they were given an opportunity to be heard.  Reid asked the court to order the jury to continue their deliberations for at least one more day.  The court responded that the jury had "given it their best," but that the foreperson would be asked whether there was a reasonable probability that further deliberations would result in a verdict.  The court explained that if the answer was no, there would not be much choice but to declare a mistrial.  The government asked the court to inquire as to the split in the

jury if a mistrial were declared.  Reid joined in the government's request, but reiterated his objection to a mistrial.

The jury was brought into the courtroom, and the foreperson was asked whether there was any reasonable probability that the jury might reach a verdict with further deliberations.  The foreperson stated that after conferring with the other jurors she believed they had reached an impasse.  The court inquired of the other jurors, and they all agreed that they had reached an impasse.  The court then stated:

> All right.  The jury having reported to the Court that it is unable to arrive at a unanimous verdict and that there is no reasonable probability that further deliberations would result in a verdict, the Court finds that there is manifest necessity to declare a mistrial, and therefore a mistrial is declared.  This case will be rescheduled for trial before another jury.

After declaring a mistrial, the court asked the foreperson about the split of the jury, in terms of numbers, and she reported that eleven jurors would find Reid guilty and one juror would not.  The jury was discharged.

As the chronology of events leading to the declaration of a mistrial demonstrates, Reid and the government were kept informed of the jury's notes and had ample opportunity to express their opinions and objections.  Reid took full advantage of those opportunities, and the court considered his requests and objections.  Contrary to Reid's argument in his motion, the court did reinstruct the jury on the burden of proof, as he had asked.  The court did not require or expect Reid to show that a mistrial was not necessary.  See Brown, 426 F.3d at 38 & n.2.

Instead, the decision to declare a mistrial was based on the specific circumstances presented in this case. The jury deliberated for just under thirteen hours and clearly demonstrated that it was unable to reach a verdict, despite the its renewed efforts after the court reinstructed on the modified Allen charge and the burden of proof. Reid's request that the jury be required to deliberate for at least one additional day, under the circumstances, was not reasonable.[3] The mistrial was declared because of a deadlocked jury, which in this case constituted manifest necessity for that decision.

B. Prosecutorial Misconduct

Reid contends that the prosecutors knowingly used perjured testimony from Deborah Poirier, which violated due process. He also argues that the prosecutors were dissatisfied with the presentation of the government's case because Renee King had "substantial character issues" and David Broadbent did not give the testimony the prosecutors expected about his observations during the robbery. As a result, Reid theorizes, the prosecutors accused Broadbent of perjury and "asked inflammatory and highly

---

[3]Although Reid now suggests that the court should have questioned the single hold-out juror to see if he or she were participating in deliberations, he did not request that alternative at the time. Further, that alternative would not have been appropriate under the circumstances in this case and would not appear to have been in Reid's best interest because eleven of the twelve jurors believed he was guilty. See McIntosh, 380 F.3d at 552, 556, & n.3.

7

prejudicial questions" of Reid on cross examination, intending to goad him into requesting a mistrial.  He contends that the court's rulings that denied his motions for a mistrial were erroneous and that the government should not be allowed to retry him after the mistrial when it would not have been allowed to do so if his motions had been granted.

"It is settled law that the Double Jeopardy Clause provides a defendant with a shield against prosecutorial maneuvering designed to provoke a mistrial." McIntosh, 380 F.3d at 557 (citing Oregon v. Kennedy, 456 U.S. 667, 674 (1982)).  That rule comes into play "if the prosecutor purposefully instigated a mistrial or if he committed misconduct designed to bring one about."  Id.  In this context, "prosecutorial misconduct must rise to an egregious level . . . [and] only where the misconduct of the prosecutor is undertaken to prevent an acquittal that he believed at the time was likely to occur in the absence of his misconduct."  United States v. Gary, 74 F.3d 304, 315 (1st Cir. 1996).

Those unusual circumstances did not occur in this case. Reid's motions for a mistrial were properly denied.  The mistrial was declared because of a deadlocked jury, not because of prosecutorial misconduct or error.  To the extent Reid is asking the court to revisit its rulings denying his motions for a mistrial, such a request is both untimely and not persuasive.

See also Orders on Reid's motion to dismiss & motion to strike (docs. no. 157 & 158).

II. <u>Motion to Disqualify AUSA Helen Fitzgibbon</u>

Reid renews his motion to disqualify AUSA Fitzgibbon on the ground that he intends to call her as a witness to testify about the circumstances of the government's contact with Deborah Poirier before she implicated Reid in the Hess Express robbery. He contends that he has a Sixth Amendment right to call Fitzgibbon as a witness and that the advocate-witness rule prohibits her from acting as both a witness and an advocate at trial, requiring her to be disqualified from participating in the prosecution of this case. The government objects to Reid's motion, again asserting that Reid has not met his burden of showing a compelling need for Fitzgibbon's testimony at trial.

The Sixth Amendment guarantees a criminal defendant "a meaningful opportunity to present a complete defense." <u>Holmes v. South Carolina</u>, 126 S. Ct. 1727, 1731 (2006) (internal quotation marks omitted). That right, however, is not unbounded. <u>Id.</u>; <u>see also</u> <u>United States v. Wooten</u>, 377 F.3d 1134, 1142-43 (10th Cir. 2004). "[T]he advocate-witness rule [] generally bars an attorney from appearing as both an advocate and a witness in the same litigation." <u>United States v. Angiulo</u>, 897 F.2d 1169, 1194 (1st Cir. 1990) (internal quotation marks omitted). Because the

rule would usually require a prosecutor to be disqualified if he or she were going to testify at trial, "[a] defendant must establish a 'compelling need' before being allowed to call a prosecutor as a trial witness." United States v. Oreto, 37 F.3d 739, 746 (1st Cir. 1994); see also United States v. Ziesman, 409 F.3d 941, 950 (8th Cir. 2005).  A compelling need cannot be shown as long as other sources are available for the same evidence. See id.; United States v. Ashman, 979 F.2d 469, 494 (7th Cir. 1993); United States v. Bin Laden, 91 F. Supp. 2d 600, 623 (S.D.N.Y. 2000).

   Poirier originally gave a statement to the Concord police that did not implicate Reid in the Hess Express robbery.  On November 22, 2005, at a meeting that included Concord Police Detective Daniel McDonald, Manchester Police Detective Eric Beland, AUSA Helen Fitzgibbon, and AUSA Clyde Garrigan at the office of the United States Attorney in Concord, Poirier, who was accompanied by her lawyer, was interviewed by Detective McDonald. Poirier said that she did not tell the truth in her first statement.  She explained what had happened on the night of the Hess Express robbery, including Reid's plan to rob a store in Concord to get money to buy more crack.  She also described Reid's activities before he left her waiting in her car.

   AUSA Fitzgibbon states in her affidavit, filed in support of the government's objection to Reid's motion for disqualification,

10

that John Tuthill, an investigator with the United States Attorney's Office in Concord, met with Poirier on August 23, 2005, in Nashua and gave Fitzgibbon's business card to Poirier. Soon after that meeting, Fitzgibbon states, Poirier called her about arranging a future meeting.  Poirier was indicted on unrelated charges on September 7, 2005, and that case was handled by another AUSA in the Concord office.  Fitzgibbon provided a "proffer letter," dated November 22, 2005, which is addressed to Poirier's counsel, Richard Monteith, and which provides the terms for the government's use of any statement made by Poirier. Fitzgibbon also states that the meeting at which Poirier gave her statement to the police and federal prosecutors, called a proffer session, occurred on November 22, 2005.

    Reid hopes to present evidence that the government induced Poirier to change her story in exchange for leniency in the pending criminal case against her.  He appears to believe that there are inconsistencies between Poirier's version of the chronology of her contacts with the government and Fitzgibbon's version.  Poirier and her attorney both testified at Reid's first trial about the chronology and circumstances of Poirier's decision to recant.  Reid states that he intends to call Fitzgibbon to impeach Poirier's testimony about those events.

    Other than to show that Poirier may remember some events leading up to November 22, 2005, differently than Fitzgibbon, it

11

is difficult to see the purpose of the testimony Reid is seeking. The minor discrepancies Reid cites do not appear to favor him and do little to impeach Poirier's credibility. Reid will again have the opportunity to examine Poirier and her counsel about the chronology and circumstances of Poirier's decision to recant her first statement. In addition, Reid will have the benefit of the testimony given at the first trial. Further, Reid has not explained why Tuthill is not available to testify about his knowledge of those events. Therefore, Reid has not shown a compelling need for Fitzgibbon's testimony as part of his defense. Absent that showing, no basis exists to allow him to call the Assistant United States Attorney as a trial witness.

## Conclusion

For the foregoing reasons, the defendant's motions to dismiss (documents no. 170 and 312) are denied. The defendant's motions for disqualification (documents no. 176 and 313) are also denied.

SO ORDERED.

_/s/ Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

June 21, 2006

cc:  Grodon Reid, pro se
     Michael J. Iacopino, Esquire
     Helen W. Fitzgibbon, Esquire
     Clyde R. W. Garrigan, Esquire